**REVISED OCTOBER 13, 2016**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
September 29, 2016
Lyle W. Cayce
Clerk

No. 15-31105

GEORGE T. MOENCH, as Co-Trustee on behalf of George T. Moench Irrevocable Trust; JENNIFER J. AREGOOD, as Co-Trustee on behalf of George T. Moench Irrevocable Trust,

Plaintiffs - Appellees

v.

MARQUETTE TRANSPORTATION COMPANY GULF-INLAND, L.L.C.,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before KING, SMITH, and COSTA, Circuit Judges.

KING, Circuit Judge:

A towing vessel owned and operated by Defendant–Appellant Marquette Transportation Co. Gulf-Inland, L.L.C., allided with a private vessel, the SES EKWATA, owned by the George T. Moench Irrevocable Trust. Plaintiffs–Appellees, trustees of the George T. Moench Irrevocable Trust, sued Marquette for damages. After a bench trial, the district court awarded damages and attorneys' fees against Marquette. Marquette appeals those awards, as well

the district court's exclusion of certain expert testimony from trial. For the reasons that follow, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The SES EKWATA was a 116 foot-long, fiberglass-hulled vessel originally built for military and commercial use, but later converted for private use. In that conversion, the EKWATA was stripped of many components, essentially leaving a bare hull and 8,000 square feet of interior space. In 2005, Plaintiff–Appellee George T. Moench purchased the essentially bare hull of the EKWATA for $200,000.[1] Between 2005 and 2011, he spent $217,000 in materials and equipment to refurbish the vessel. Moench, along with a marine carpenter, also spent thousands of hours laboring on the EKWATA, where Moench lived several months each year.

In late May 2011, Moench moved the EKWATA to a fleeting facility along the Atchafalaya River to keep it safe during expected flooding. On June 10, 2011, the M/V SALVATION, a steel-hulled tug owned and operated by Defendant–Appellant Marquette Transportation Co. Gulf-Inland, L.L.C., which was towing two barges, allided[2] with the EKWATA while it was moored at the fleeting facility. Prior to the allision, the SALVATION's captain knew that the Atchafalaya River was experiencing historic water levels, which created the potential for extreme cross-currents and required him to exercise extreme caution. Yet he proceeded down the river without assistance from another tug, and upon arriving at a holding position in the river, left the controls for a cup of coffee while the on-duty deckhand—who was supposed to

---

[1] The EKWATA's registered owner was the George T. Moench Irrevocable Trust. For ease of reference, we refer to the George T. Moench Irrevocable Trust and George T. Moench interchangeably as "Moench."

[2] An allision is "[t]he contact of a vessel with a stationary object such as an anchored vessel or a pier." *Allision*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Apache Corp. v. Global Santa Fe Drilling Co.*, 435 F. App'x 322, 323 n.1 (5th Cir. 2011) (per curiam).

be on watch—was below deck. By the time the captain returned to the controls, the river's current had taken control of the SALVATION. After unsuccessfully attempting to regain control, the captain decided to allide with the EKWATA to avoid damaging the two barges in tow.

The allision between the steel-hulled SALVATION and fiberglass-hulled EKWATA severely damaged the EKWATA[3] and caused it to take on water. After the allision, Moench attempted to determine the full extent of the damage by dry-docking the EKWATA; however, he was unable to find anyone willing to assume the liability of transporting the severely damaged vessel for inspection. The EKWATA was subsequently vandalized, which resulted in various materials and equipment Moench purchased being stolen.

Moench filed the instant suit on June 6, 2012, invoking the admiralty and maritime jurisdiction of the district court and asserting general maritime law negligence and unseaworthiness claims against Marquette. Moench claimed the EKWATA was a total (or constructive total) loss as a result of the allision and sought the pre-casualty value of the vessel.[4] Up to and through trial, Marquette contested liability, despite the captain of the SALVATION admitting the facts outlined above. On the issue of damages, Moench testified at trial (without objection from Marquette) to the substantial financial investment he had made in the EKWATA. Moench and Marquette also elicited the testimony of experts at trial to assist the court on the issue of damages. Moench's expert testified that the pre-casualty value of the EKWATA was $850,000–$1.5 million. He also testified that the replacement cost, less

[3] Among other things, the allision resulted in compression damage; an eighteen foot hole on the starboard side of the vessel; another twelve foot by six foot hole on the starboard side of the vessel; various splits and fractures in the hull extending below the water line; and internal damage.

[4] Moench also sought punitive damages and lost business revenue from Marquette. The district court dismissed these claims, and they are not directly at issue in this appeal.

depreciation, of the EKWATA was $5 million–$7.5 million. Marquette's first expert testified that the EKWATA was a constructive total loss as a result of the allision and that its pre-casualty value was $50,000. Marquette's second expert also testified that the EKWATA was a constructive total loss, concluding that repair costs would be "hundreds of thousands" of dollars while the EKWATA's pre-casualty value was $75,000–$100,000. The third expert presented by Marquette, Larry Strouse, was originally hired and designated by Moench. He testified that repair costs would be $285,000, but admitted this estimate was inconclusive of all damages from the allision because the EKWATA could not be dry-docked to fully assess the damage below the waterline. At trial, Marquette also sought to elicit testimony from Strouse that the pre-casualty value of the EKWATA was $120,000. The district court, however, concluded that he could not testify to that opinion because it was not expressed in his expert report.

After the bench trial, the district court found Marquette at fault. On the issue of damages, the district court, after considering all of the testimony, found that the EWKATA's pre-casualty value was $417,000 and that the cost of repairing the EKWATA would exceed that value. Based on these findings, the district court concluded that the EKWATA was a constructive total loss and awarded Moench $322,890, representing the pre-casualty value of the EKWATA, less the value of materials and equipment that Moench could have preserved following the allision. The district court also found that Marquette's handling of the case was "an abuse of the process and bad faith" and expressed its "feel[ing]" that an award of reasonable attorneys' fees and costs to Moench was justified under those circumstances. Moench subsequently requested $323,138.90 in fees and costs based on Marquette's handling of the case, submitting detailed declarations and billing records to substantiate its request. Marquette responded that its handling of the case did not warrant

sanction. Marquette also objected to the amount of fees and costs requested by Moench, principally asserting that it should be reduced as disproportionate to the amount involved and the results obtained. The district court agreed with this latter objection in part and reduced Moench's request by $27,702.81, awarding him $295,436.09. Marquette timely appealed.

## II. DISCUSSION

Marquette asserts that the district court erred in (i) making its constructive total loss determination; (ii) refusing to allow Larry Strouse to opine on the EKWATA's pre-casualty value; and (iii) imposing attorneys' fees as a sanction for its handling of the case and awarding the amount of fees it did. We address each assertion in turn.

### A. Constructive Total Loss Determination

Marquette asserts that the district court's pre-casualty valuation of the EKWATA and its finding that the costs of repair would exceed that valuation are not supported by the record, particularly the expert testimony introduced at trial. Thus, Marquette argues, the district court erred in concluding that the EKWATA was a constructive total loss and in awarding Moench damages on that basis.

We review the district court's constructive total loss determination for clear error. *See Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 491 (5th Cir. 1986). A vessel is a total (or constructive total) loss when repair is not physically or economically feasible, such as when the cost of repairs exceeds the vessel's pre-casualty value. *See Gaines Towing & Transp., Inc. v. Atlantia Tanker Corp.*, 191 F.3d 633, 635 (5th Cir. 1999); *see also Pillsbury Co. v. Midland Enters., Inc.*, 715 F. Supp. 738, 763 (E.D. La. 1989). In the case of total (or constructive total) loss, the owner is entitled to recover the pre-casualty value of the vessel (i.e., the price which would result from the hypothetical fair negotiations between an owner willing to sell and a purchaser

desiring to buy). *See Standard Oil Co. of N.J. v. S. Pac. Co.,* 268 U.S. 146, 155–56 (1925); *see also Gaines Towing & Transp.*, 191 F.3d at 635. When a vessel's pre-casualty value cannot be established by recent comparable sales, there is no precise rule or formula for valuation. *See Standard Oil*, 268 U.S. at 155–56. Instead, the district court "should consider any and all evidence before it" that bears on value. *Greer v. United States*, 505 F.2d 90, 93 (5th Cir. 1974). This includes evidence of the vessel's purchase price and the cost of any improvements to the vessel. *Id.* "[O]ther evidence such as replacement cost, depreciation, expert opinion and the amount of insurance" should also be considered to determine pre-casualty value. *King Fisher Marine Servs., Inc. v. NP Sunbonnet*, 724 F.2d 1181, 1185 (5th Cir. 1984); *see also Carl Sawyer, Inc. v. Poor*, 180 F.2d 962, 963 (5th Cir. 1950). The court must then make an "informed judgment." *Bloomfied S.S. Co. v. Brownsville Shrimp Exch.*, 243 F.2d 869, 873 (5th Cir. 1957). In doing so, the court is not bound by any single piece of evidence, including the opinions or formulas elicited by the parties' experts.[5] *See Bloomfield*, 243 F.2d at 873 (rejecting argument that district court was bound by vessel's purchase price, book value, or similar values reached by expert surveyor); *see also Lukens v. Comm'r*, 945 F.2d 92, 96 (5th

---

[5] Marquette seems to argue that, even after it presented evidence, the district court was (and consequently this court is) bound by the evidence presented in Moench's case-in-chief. However, this court made clear in *Greer* that the district court "should consider any and all evidence before it." 505 F.2d at 93. This necessarily included the evidence Marquette elected to present. Our conclusion in *Greer* is consistent with the general rule that, where both parties have offered evidence, "the party supported by the weight of the evidence will prevail regardless of which party bore the burden of persuasion, proof, or preponderance." *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 332 (5th Cir. 2010) (quoting *Blodgett v. Comm'r*, 394 F.3d 1030, 1039 (8th Cir. 2005)); *see also Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 328–29 (4th Cir. 2001). It is also consistent with our general practice of testing the sufficiency of the evidence on appeal by viewing the entire record. *See Wealden Corp. v. Schwey*, 482 F.2d 550, 551 (5th Cir. 1973) (rejecting request "for a review of the evidence as it stood when plaintiff closed the presentation of his evidence"); *see also Fed. Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 32 (1st Cir. 2007); *Gaffney v. Riverboat Servs. of Indiana*, 451 F.3d 424, 451 n.29 (7th Cir. 2006).

Cir. 1991). If the district court's valuation "is within the range of figures that may properly be deduced from the evidence," it is not clearly erroneous, even if the valuation is not "a figure as to which there is specific testimony." *Lukens*, 945 F.2d at 96 (quoting *Anderson v. Comm'r*, 250 F.2d 242, 249 (5th Cir. 1957)).

The district court had the benefit of witnessing the testimony at trial and was in the best position to resolve the conflicting testimony concerning value and repair cost. *See Ryan*, 792 F.2d at 491. With regard to value, the district court found that the EKWATA was an uncommon vessel which could not be valued based on comparable sales and that much of the evidence on valuation was unreliable. It credited the vessel's purchase price ($200,000) and the cost of materials and equipment spent improving it ($217,000) as the most reliable of the recognized indicia of value. *See Greer*, 402 F.2d at 93. The district court's $417,000 valuation was near the middle of the experts' opinions ($50,000–$1.5 million) and well below replacement cost, less depreciation ($5–7.5 million)—both of which are recognized indicia of value. *See King Fisher Marine Servs.*, 724 F.2d at 1185. The district court's valuation was "within the range of figures that may properly be deduced from the evidence" and thus not clearly erroneous. *Lukens*, 945 F.2d at 96 (quoting *Anderson*, 250 F.2d at 249); *see also Greer*, 505 F.2d at 93; *Bloomfield*, 243 F.2d at 874.

With regard to repair cost, the district court heard the undisputed testimony at trial that the steel-hulled SALVATION's allision with the fiberglass-hulled EKWATA caused severe damage to the EKWATA. The damage was severe enough that all of the expert witnesses agreed (in spite of their differing opinions on value and repair cost) that the EKWATA was a total loss, either real or constructive. The district court credited the expert testimony that repair costs would total "hundreds of thousands" of dollars. It also noted Strouse's testimony "that repairs would be in the range of $285,000 was, admittedly, incomplete and inconclusive" because Strouse could not fully

assess the damage below the waterline without having the EKWATA dry-docked. Although Strouse's estimate nominally included damage below the waterline, we cannot say, given the other testimony and Strouse's uncertainty about damage below the waterline, that the district court clearly erred in finding that the cost of repairing the severely damaged EKWATA exceeded its pre-casualty value and, therefore, the EKWATA was a constructive total loss.

**B. Exclusion of Expert Testimony**

Marquette next asserts that the district court erred in refusing to allow Larry Strouse to opine on the EKWATA's pre-casualty value, even though he did not express an opinion on that in his expert report. According to Marquette, Strouse was a non-retained expert witness and thus was not required to provide any report under Federal Rule of Civil Procedure 26(a)(2)(B). Therefore, argues Marquette, Strouse should have been allowed to testify on any "facts or data obtained or observed in the course of the sequence of events giving rise to the litigation," whether included in his report or not. *See* Fed. R. Civ. P. 26(a)(2)(C).

This court reviews a district court's exclusion of expert testimony for abuse of discretion. *See Brown v. Ill. Cent. R. R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013). But even when this court finds an abuse of discretion, it will not reverse the district court's ruling unless it affected the party's "substantial rights." 28 U.S.C. § 2111; *see also* Fed. R. Evid. 103(a). The party claiming the error bears the burden of demonstrating its substantial rights were prejudiced. *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 282 (5th Cir. 2008). "A ruling has affected the substantial rights of the party if, when considering the evidence presented at trial, the ruling had a substantial effect on the outcome of the trial." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014). The exclusion of cumulative evidence does not affect a

party's substantial rights. *See Sanford v. Johns–Manville Sales Corp.*, 923 F.2d 1142, 1148 (5th Cir. 1991).

Assuming *arguendo* that the district court abused its discretion in refusing to allow Strouse to opine on the EKWATA's pre-casualty value, Marquette has failed to demonstrate that this refusal substantially affected the outcome of the trial. Strouse's proffered testimony would have been merely cumulative of other testimony on pre-casualty value offered at trial. Marquette repeatedly emphasized that the EKWATA's pre-casualty value was substantially less than the amount testified to by Moench's expert (and what the district court ultimately found). Marquette elicited testimony from two experts that the pre-casualty value of the EKWATA was less than $100,000 because the EWKATA was "cosmetically and mechanically deficient." As Marquette itself recognizes on appeal, Strouse's testimony would have simply "confirmed each of these opinions." Because Strouse's testimony was admittedly cumulative, the district court's error, if any, did not affect Marquette's substantial rights. *See Sanford*, 923 F.2d at 1148.

**C. Attorneys' Fee Award**

Marquette finally argues that it had a good faith basis for questioning Moench's pre-casualty valuation; thus, the district court was not justified in awarding attorneys' fees as a sanction for its handling of the case.[6] Moreover, Marquette argues, the award was excessive.

We review a district court's determination of an attorneys' fee award under an abuse of discretion standard and the findings of fact supporting the

[6] On appeal, Marquette also argues, as it did in the district court, that the parties' settlement negotiations were improperly considered in making the fee award. In ruling on this argument, the district court stated that the parties' settlement negotiations were not the basis for its fee award, rather they were "simply additional evidence of Marquette's actions which the Court found throughout the case to be an abuse of the process and bad faith." With respect to the district court's statement that the parties' settlement negotiations were not the

award under a clearly erroneous standard. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013). The general rule in federal court, the so-called "American Rule," is that litigants are responsible for their own fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 257 (1975). Federal courts, however, possess "inherent power" to assess fees as sanctions when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."[7] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (quoting *Alyeska Pipeline Serv.*, 421 U.S. at 258–59). Under this test, sanctions are warranted when a party "knowingly or recklessly raises a[n objectively] frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 561 & n.4 (5th Cir. 2015) (quoting *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008)). Thus, even when a party is pursuing a meritorious claim or defense, sanctions may be assessed when the party "abuse[s] . . . the judicial process in the method of prosecution" of that claim or defense. *Batson v. Neal Spelce Assocs. Inc.*, 805 F.2d 546, 550 (5th Cir. 1986). Pursuing "an aggressive litigation posture" is not an abuse of the judicial process, "[b]ut advocacy

basis for its fee award, "[w]e have no choice but to believe [the district court]." *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A 1981).

[7] When "invoking its inherent power" to sanction, a district court "must comply with the mandates of due process." *Chambers*, 501 U.S. at 50; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980). Although Marquette asserts, in passing, that the district court's award was made *sua sponte*, it does not offer any supporting argument or citation to authority indicating that the district court failed to comply with due process. Accordingly, any due process argument Marquette could have made was inadequately briefed and therefore waived. *See* Fed. R. App. P. 28(a)(8)(A); *see also Willis v. Cleo Corp.*, 749 F.3d 314, 319 (5th Cir. 2014). But even if it was not, we could not conclude that the district court abused its discretion by failing to give Marquette the opportunity to be heard at a meaningful time and in a meaningful manner—the fundamental requirement of due process, *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)—because it considered and responded to all of Marquette's various written submissions. *See Merriman v. Sec. Ins. Co. of Hartford*, 100 F.3d 1187, 1191–92 (5th Cir. 1996) ("[T]he opportunity to respond through written submissions usually constitutes sufficient opportunity to be heard." (citing *Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 347 (5th Cir. 1990))).

simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly [is]." *Id.*

Here, the district court detailed the factual findings underpinning its conclusion that Marquette abused the judicial process and acted in bad faith during the course of the litigation. Specifically, the district court found that Marquette contested liability up to and through trial even though it "clearly knew the extent of its liability based on the circumstances of the case and the actions of its captain . . . [and] was fully aware of the fact that [Moench] had no liability whatsoever for this allision." The district court further found that Marquette "presented two experts who were so lacking they could not even properly name the vessel [at issue]."

On appeal, Marquette does not specifically challenge any of these findings. Instead, Marquette asserts that the fee award was unwarranted because Marquette had a good faith basis to challenge the quantum of damages and thus in proceeding through a trial. But even if true, this fact did not justify Marquette's intransigence on liability or the means by which Marquette defended Moench's damages claim—namely, one expert who, according to the district court's findings, opined on value "without including any comparables, without considering the equipment on the vessel, without an accurate description of the vessel, and without reliable underlying information" and a second expert who, according to the district court's findings, "not only failed to correct the *glaringly* incorrect information set forth in [the first expert's] report, but incorporated it into his own." *See Gate Guard Servs.,* 792 F.3d at 562–63; *Batson*, 805 F.2d at 550–51. We cannot say that the district court's findings on bad faith were clearly erroneous or that the court abused its discretion in awarding Moench fees as a sanction based on those findings.

Having concluded that the district court did not abuse its discretion in awarding attorneys' fees as a sanction, we must address the amount of fees

awarded by the district court. The parties agree that the two-step lodestar method applies to the calculation of the fee award. Under this method, a court must first calculate the "lodestar" amount "by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "There is a strong presumption of the reasonableness of the lodestar amount." *Black*, 732 F.3d at 502. But the district court may increase or decrease the lodestar amount "based on 'the relative weights of the twelve factors set forth in *Johnson* [*v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)].'" *Id.* (quoting *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006)).[8] In reviewing lodestar adjustments, this court reviews the district court's analysis "only to determine if the court sufficiently *considered* the appropriate criteria." *Id.* (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995)). A district court must provide "a reasonably specific explanation for all aspects of a fee determination." *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010). This does not, however, require a district court to recite or even mention the *Johnson* factors, so long as "the record clearly indicates that the district court has utilized the *Johnson* framework as the basis for its analysis." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642 (5th Cir. 2012) (internal quotation marks and citation omitted); *see also EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

[8] The twelve *Johnson* factors are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

Marquette does not challenge the district court's determination of the lodestar amount itself. Rather, it challenges the district court's decision not to reduce (or further reduce) that amount based on the *Johnson* framework, namely the degree of success obtained by Moench. According to Marquette, the district court's factual findings do not indicate that the court even considered the *Johnson* framework. We disagree. Although the district court did not explicitly recite the *Johnson* factors, its findings clearly evince that the *Johnson* framework was the basis for its analysis. Specifically, they demonstrate that the district court considered Marquette's objection to the fee request, namely that the fees sought were disproportionate to the amount involved and the results obtained (*Johnson* factor 8); carefully reviewed the detailed declarations and billing records submitted by Moench to determine which fees could be reduced or eliminated based on Marquette's objection; and did, in fact, reduce or eliminate certain fees based on Marquette's objection. The district court's findings, like others we have reviewed, certainly "could have used more details," *Forbush v. J.C. Penny Co.*, 98 F.3d 817, 823 (5th Cir. 1996), but nonetheless they make sufficiently clear that the district court did "consider the relationship between the extent of success and the amount of the fee award," *Combs v. City of Huntington*, 829 F.3d 388, 395 (5th Cir. 2016) (alteration omitted) (quoting *Farrar v. Hobby*, 506 U.S. 103, 115–16 (1992)). Marquette's arguments with respect to the *Johnson* framework do not persuade us that the district court abused its discretion by declining to make further downward adjustment to the fee award.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.